[Cite as *State v. Hill*, 2013-Ohio-578.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98366**

## STATE OF OHIO

PLAINTIFF-APPELLEE

## RONDELL L. HILL

DEFENDANT-APPELLANT

---

**JUDGMENT:**
CONVICTION MODIFIED, SENTENCE VACATED,
REMANDED FOR RESENTENCING

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-551296

**BEFORE:** Keough, P.J., E.A. Gallagher, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** February 21, 2013

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, OH 44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Nicole Ellis
Kevin R. Filiatraut
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Defendant-appellant, Rondell L. Hill ("Hill"), challenges his conviction and sentence for aggravated murder. Because we find there was insufficient evidence that Hill acted with prior calculation and design, one of the elements of aggravated murder, we modify Hill's conviction from aggravated murder to murder, vacate his sentence, and remand for resentencing.

## I. Background

{¶2} Hill was indicted on one count of aggravated murder in violation of R.C. 2903.01(A), with one- and three-year firearm specifications. He pled not guilty and the matter proceeded to a jury trial.

{¶3} Damon Taylor testified that in the early evening of June 2, 2011, his friend, Tyrone Spence, offered him $10 to drive him to Hill's house on Cory Avenue in Cleveland. Taylor said that Spence sometimes bought marijuana from Hill and wanted to go to Hill's house because Hill owed him money.

{¶4} Taylor drove Spence to Cory Avenue and parked approximately three houses down from Hill's house. Spence got out of the car, walked down to Hill's house, and began talking with Hill, who was outside. Taylor testified that his car windows were down and he sat in his car and watched Spence and Hill in his rearview mirror. According to Taylor, the conversation between the two men was "normal" at first but then became unpleasant. Taylor said Spence and Hill were arguing about money, and he

heard Hill tell Spence that he did not want him to come to his house and make a scene in front of his family. Taylor then heard Spence tell Hill that he could keep the money, and Spence walked back to the car and got in. It appeared to Taylor that Spence was ready to leave. According to Taylor, Hill then walked up to the car and told Spence "[y]ou don't have to make a big deal out of it; I have that for you, man." Spence then got out of the car and calmly walked with Hill towards his house. According to Taylor, Spence and Hill were "regularly talking" at first but their conversation escalated into another argument. Taylor said he again heard Hill tell Spence that "he didn't want [him] in front of his house, and he didn't want him coming around asking for his money in front of his family and stuff like that."

{¶5} Taylor said that he then heard two gunshots, looked in his rearview mirror and saw Spence on his knees on the ground and Hill standing over him, then heard another gunshot and saw Hill tuck a gun in his pants and run away. Taylor got out of the car and tried to help Spence back to the car but Spence collapsed, so Taylor eased him to the ground and waited for an ambulance. Taylor subsequently gave a written statement to the police and picked Hill out of a photo array as the shooter.

{¶6} Gloria Scott testified that on the day of the shooting, she was in her house on Cory Avenue and heard two men outside arguing. After she heard two gunshots, she looked outside and saw the victim lying in the street.

{¶7} Robert Ester, who lived on Cory Avenue several houses down from Hill, said that on the night of the shooting, he and several friends were drinking beer on the

porch of an abandoned house across the street from Hill's house. Ester said that Hill was outside working on his car when a car pulled up. Ester saw a male get out of the car and heard him ask Hill for money. Hill told the male that he would get the money for him when he was done with the car and to come back in 20 minutes. Ester said he never saw Hill threaten Spence during the argument and that the confrontation never escalated into a physical fight, although he said the male grabbed at Hill's arm as Hill walked back toward his car. Ester denied seeing either Hill or Spence brandish a weapon.

{¶8} The police then came by and told Ester and his friends to move, so Ester went home. While he was in his house, he heard two or three gunshots. Ester said he went outside and saw the man who had been talking to Hill on the ground and another man standing over him; Hill was no longer outside.

{¶9} Dr. Erica Armstrong, a forensic pathologist and deputy medical examiner in the Cuyahoga County medical examiner's office, testified that Spence died as the result of two gunshot wounds that entered the front of his body; the manner of death was homicide. She testified further that Spence had fresh abrasions to his knees and a low level of marijuana metabolite in his system.

{¶10} Kathleen Carlin, a detective in the Cleveland Police Department Homicide Unit, testified that Hill turned himself in several days after the murder. Hill's girlfriend subsequently gave the police a cell phone that purportedly belonged to Hill, but the police determined that the phone was not the phone that Hill actually used. Carlin said that through her investigation, she obtained Hill's actual cell number and retrieved his phone

records, which demonstrated that Hill called Spence on June 1, 2011, the day before the shooting, and that Spence then tried to call Hill nearly twenty times throughout the day. The records also demonstrated that Spence texted Hill on June 1, 2011,[1] and called him five times on June 2, 2011; Carlin testified that the last call was made at 6:28 p.m., an hour and a half before Spence was murdered. The length of the calls ranged from 5 to 38 seconds.

{¶11} After the state rested, the trial court denied Hill's Crim.R. 29(A) motion for acquittal. Hill did not call any witnesses and did not testify in his own defense. The state requested a jury instruction on the lesser included offense of murder, which the court granted. The jury subsequently found Hill guilty of aggravated murder and the firearm specifications, and the trial court sentenced him to three years on the firearm specification, consecutive to 30 years for aggravated murder, i.e., life without parole eligibility until after 33 years in prison.

## II. Analysis

A. Sufficiency of the Evidence

{¶12} In his first assignment of error, Hill contends that the trial court erred in denying his Crim.R. 29(A) motion for acquittal because there was insufficient evidence that he committed aggravated murder.

{¶13} A Crim.R. 29 motion challenges the sufficiency of the evidence. The test for sufficiency requires a determination of whether the prosecution met its burden of

---

[1]The text said "Baby boy, my ride can't wait all day."

production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

**{¶14}** Hill contends that the evidence was insufficient to support his conviction because there was no evidence of a motive and no physical evidence tying him to the murder, and the only direct evidence linking him to the murder came from Damon Taylor, who was not a credible witness. Hill's arguments lack merit.

**{¶15}** The state is not required to prove motive to support a murder conviction. *State v. Woodson*, 8th Dist. No. 93476, 2010-Ohio-1671, ¶ 24, citing *State v. Lancaster*, 167 Ohio St. 391, 149 N.E.2d 157 (1958), paragraphs one and two of the syllabus ("Motive is not an element of the offense of aggravated murder that the state must prove beyond a reasonable doubt.")

**{¶16}** Moreover, the lack of physical evidence tying Hill to the murder is not dispositive. Physical evidence is not required to sustain a conviction. *State v. Lopez*, 8th Dist. No. 94312, 2011-Ohio-182, ¶ 62, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus. "Proof of guilt may be made by

circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence." *Jenks* at 272. Damon Taylor offered eye-witness testimony that, if believed, was sufficient to support Hill's conviction. Although Hill complains that Taylor was not a credible witness, the test for sufficiency is not whether the state's evidence is to be believed, but whether, if believed, the evidence would support a conviction. *State v. Woods*, 8th Dist. No. 82789, 2004-Ohio-2700, ¶ 63. The court does not weigh the credibility of the witnesses when reviewing the sufficiency of the evidence. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.

**{¶17}** Nevertheless, although Hill's arguments about the lack of a motive and physical evidence are without merit, we find that there was insufficient evidence to support Hill's conviction for aggravated murder because the state failed to produce sufficient evidence that Hill acted with prior calculation and design.

**{¶18}** Hill was convicted of aggravated murder in violation of R.C. 2903.01(A), which provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *." A person acts purposely when it is his specific intent to cause a certain result. R.C. 2901.22(A).

**{¶19}** Damon Taylor offered eye-witness testimony at trial that identified Hill as the shooter. He testified that he heard two gunshots, saw Spence on the ground on his knees with Hill standing over him, heard another shot, and then saw Hill tuck a gun in his

waistband and run away. This testimony, if believed, is sufficient to demonstrate that Hill purposely caused Spence's death.

**{¶20}** The other element of aggravated murder is "prior calculation and design," which "indicate[s] studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim." *State v. Taylor,* 78 Ohio St.3d 15, 19, 1997-Ohio-243, 676 N.E.2d 82. The Revised Code does not define "prior calculation and design," but the Ohio Supreme Court

> ha[s] interpreted the phrase to require evidence of "more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill." *State v. Cotton*, 56 Ohio St.2d 8, 11, 381 N.E.2d 190. While "[n]either the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves," "momentary deliberation is insufficient." *State v. D'Ambrosio*, 67 Ohio St.3d 185, 196, 1993-Ohio-170, 616 N.E.2d 909, quoting the 1973 Legislative Service Commission Comment to R.C. 2903.01.

*State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 38.

**{¶21}** The existence of prior calculation and design is determined on a case-by-case analysis of the facts and evidence. *State v. Jones*, 91 Ohio St.3d 335, 345, 2001-Ohio-57, 744 N.E.2d 1163. Although there is no bright-line rule for determining prior calculation and design, the Ohio Supeme Court has found the following factors pertinent to determining the existence of prior calculation and design:

> (1) Did the accused and victim know each other, and if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or murder site? and (3) Was the act drawn out or "an almost spontaneous" eruption of events?

*State v. Reddy*, 192 Ohio App.3d 108, 2010-Ohio-5759, 948 N.E.2d 454 (8th Dist.), ¶ 21, quoting *Taylor*, 78 Ohio St.3d at 19, 1997-Ohio-243, 676 N.E.2d 82.   These factors should be weighed with the totality of the circumstances surrounding the murder.   *State v. Jenkins*, 48 Ohio App.2d 99, 102, 355 N.E.2d 825 (8th Dist.1976).   In this case, considering these factors and the totality of the circumstances, we find that even construing the evidence in a light most favorable to the prosecution, there was insufficient evidence of prior calculation and design.

{¶22} Spence and Hill obviously knew each other, and the relationship apparently was strained because Hill owed Spence money, which Spence wanted to collect (the first factor).   There was insufficient evidence, however, to demonstrate that Hill gave thought or preparation to choosing the murder weapon or the site of the murder (the second factor).

{¶23} The mere fact that Hill, a drug dealer, had a gun on his person when Spence arrived does not indicate a calculated scheme to kill Spence.   This court and others have held that mere possession of a weapon is not, without more, evidence of prior calculation and design.   *State v. Davis*, 8 Ohio App.2d 205, 207, 456 N.E.2d 1256 (8th Dist.1982) ("The mere fact that defendant was carrying a gun on this occasion but was not carrying a gun on some earlier visit to a different bar is not sufficient to demonstrate a prior caluclation and design to kill someone at this bar."); *State v. Johnson*, 10th  Dist. No. 97APA03-315, 1998 Ohio App. LEXIS 2069 (May 5, 1998) ("That defendant had a gun with him * * * is not, by itself, evidence of a prior calculation and design, given the

testimony offered by defendant's girlfriend that he 'sort of' frequently carried a weapon").

{¶24} And despite the state's argument otherwise, Hill's presence outside when Spence arrived does not indicate that he planned to kill Spence. Taylor testified that he saw eight to ten people milling around outside while Spence and Hill were arguing, and Ester testified that Hill's young children were outside during the argument. Common sense dictates that if Hill had actually given thought to choosing the murder site, he would have determined to kill Spence when there were no witnesses around and his children were not present, especially given Hill's statements that he did not want Spence coming over to collect money in front of his family.

{¶25} With respect to the third factor, we find that Spence's murder was the result of an almost spontaneous eruption of events. The evidence demonstrated that Hill and Spence argued about the money, but the argument never got physical and Hill never brandished a weapon or threatened Spence. Although the argument apparently got heated, Spence eventually told Hill that he could keep the money and walked back to Taylor's car and got in; he was ready to leave the scene, and the argument was apparently over. There was no evidence that Hill pursued Spence to the car or tried to stop him from leaving. Rather, Taylor testified that Hill came to the car and had a "normal conversation" with Spence, at which point Spence calmly got out of the car and walked with Hill back to his house. The state's assertion that Hill somehow "coaxed" Spence out of the car in order to kill him is not consistent with this evidence.

**{¶26}** The evidence demonstrated that both Hill and Spence were calm as they walked toward Hill's house but that their argument about the money quickly escalated again. Taylor testified that only a few moments later, he heard three shots, and then saw Hill put his gun in his pants and run away. We can reach no other conclusion from this evidence but that Hill's decision to kill Spence was not the result of a scheme to implement a calculated decision to kill, but the result of the sudden eruption (again) of his argument with Spence about the money.

**{¶27}** The fact that Hill shot Spence three times does not indicate prior calculation and design. Although there was evidence that Spence was down on his knees when Hill fired the third shot, the evidence was that the shots were fired in succession, indicating that the act was one continuous course of events. This case is distinguishable from cases finding prior calculation and design where shots were fired initially and then again several minutes later or where the defendant pursued and then shot an injured victim who was trying to escape. *State v. Simms*, 8th Dist. No. 69314, 1996 Ohio App. LEXIS 4087 (Sept. 19, 1996).

**{¶28}** The evidence in this case indicates a sudden eruption of events, not prior calculation and design. Accordingly, there was insufficient evidence to support Hill's conviction for aggravated murder. There was, however, sufficient evidence that Hill committed murder in violation of R.C. 2903.02, which provides that "[n]o person shall purposefully cause the death of another."

{¶29} Accordingly, Hill's conviction for aggravated murder is modified to the lesser included offense of murder. *See Reddy*, 192 Ohio App.3d 108, 2010-Ohio-5759, 948 N.E.2d 454, at ¶ 35, citing *State v. Davis*, 8 Ohio App.3d 205, at 207, 456 N.E.2d 1256 (appellate court has authority to modify a conviction to a lesser included offense supported by the record, rather than ordering an acquittal or a new trial).

{¶30} The first assignment of error is sustained in part; Hill's conviction is modified accordingly.

B.    Manifest Weight of the Evidence

{¶31} In his second assignment of error, Hill contends that his conviction for aggravated murder was against the manifest weight of the evidence because there was no physical evidence linking him to the murder, and Damon Taylor was not a credible witness. In light of our resolution of the first assignment of error, we will consider Hill's arguments as they relate to his conviction for murder.

{¶32} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Ponce*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 1997-Ohio-52, 678 N.E.2d 541. A conviction should

be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶33} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶34} The jury in this case heard Taylor's explanations about the minor inconsistencies in his testimony. On cross-examination, defense counsel asked Taylor why he initially told the police when they arrived on the scene that he did not know Spence; Taylor explained that he was scared and did not want to get involved because he had taken his girlfriend's car without her knowledge and even though his license was suspended. Taylor also acknowledged upon cross-examination that his written statement did not include information that Spence came back to the car before he was shot, as he testified in court. Taylor also acknowledged that he testified on direct examination that

Hill had a silver gun but, when giving his written statement, he told the police that he could not describe the gun. He was also cross-examined about the number of times he had met Hill prior to the shooting; on direct examination, he said that he had met Hill two or three times, but in his written statement he said he had met Hill "[o]nce before last Friday when I took Tyrone over there to meet up with him."

{¶35} Despite these inconsistencies, the jury chose to believe Taylor's testimony that Hill shot Spence. On this record, we do not find that Taylor's testimony was so incredible that the jury lost its way or created a manifest miscarriage of justice in believing him. Although there were some minor inconsistencies in his story, Taylor never wavered in his identification of Hill as the shooter, both to the police and at trial. And other evidence supported his testimony: Taylor testified that he heard a third shot as Spence was on the ground on his knees facing Hill, and the medical examiner testified that Spence had fresh abrasions on his knees and the gunshot wounds entered from the front; Scott testified that she heard two men outside arguing, which corroborated Taylor's testimony that Hill and Spence were arguing; and Ester corroborated Taylor's testimony that Hill and Spence were arguing about the money that Hill owed to Spence.

{¶36} In light of this evidence, Hill's conviction for murder is not against the manifest weight of the evidence. His second assignment of error is therefore overruled.

C. Confrontation of Witnesses

{¶37} During cross-examination of Ester, defense counsel asked Ester if he was aware that there had been a shooting on Cory Avenue three days prior to Spence's

murder.  Defense counsel then asked Ester if he was aware that someone had tried to shoot Hill in that shooting.  The trial court sustained the state's objection to this line of questioning, ruling that the prior shooting was irrelevant to this case.

{¶38} In his third assignment of error, Hill contends that the trial court's ruling denied him his Sixth and Fourteenth Amendment rights to confront the witnesses against him.  We disagree.

{¶39} Only relevant evidence is admissible under Evid.R. 402.  Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  A trial court has broad discretion in determining whether to admit or exclude evidence.  *Kirschbaum v. Dillon*, 58 Ohio St.3d 58, 65, 567 N.E.2d 1291 (1991).  Absent an abuse of discretion that materially prejudices a party, a trial court's ruling regarding the admissibility of evidence will not be disturbed.  *Id.*

{¶40} The trial court did not abuse its discretion in excluding evidence of the prior shooting because it was irrelevant to this case. As defense counsel conceded, the police reports regarding the May 30th shooting contained no mention of Hill, either as a victim or witness, and the only person who told the police that Hill was an intended victim of that shooting was Hill, when he gave a statement to the police after Spence's murder. Furthermore, as defense counsel also conceded, there was no evidence that either Spence or Taylor were involved in the earlier shooting, and counsel wanted the evidence to come

in only so counsel could insinuate that "the person [who] was responsible for the shooting on the 30th may have been the person responsible for the shooting on the 2nd."

**{¶41}** Because the evidence of the earlier shooting was irrelevant, the trial court did not abuse its discretion in excluding the evidence. The third assignment of error is therefore overruled.

D.      Ineffective Assistance of Counsel

**{¶42}** In his fourth assignment of error, Hill contends that he was denied his constitutional right to effective assistance of counsel because his lawyer did not request a jury instruction regarding self-defense.

**{¶43}** To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that he was prejudiced by that deficient performance, such that, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Sanders*, 94 Ohio St.3d 150, 151, 2002-Ohio-350, 761 N.E.2d 18. In short, counsel's errors must be so serious as to render the result of the trial unreliable. A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶44}** Under Ohio law, self-defense is an affirmative defense. *State v. Martin*, 21 Ohio St.3d 91, 488 N.E.2d 166 (1986). To establish self-defense, the defendant must

show that he (1) was not at fault in creating the situation giving rise to the fight; (2) had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was through the use of force; and (3) did not violate any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

**{¶45}** Hill's counsel did not err in not requesting an instruction regarding self-defense because there was no evidence to support the instruction. There was no evidence that Hill had a bona fide belief that he was in imminent danger and his only means of escape was to use force; rather, the testimony was that Spence did not have a gun and the argument never escalated into a physical fight. Furthermore, self-defense was inconsistent with Hill's theory of the case that he was not the shooter. Accordingly, Hill has failed to demonstrate that counsel's performance fell below an objective standard or that he was prejudiced by such performance.

**{¶46}** The fourth assignment of error is therefore overruled.

E.     Jury Instruction Regarding Flight

**{¶47}** In his fifth assignment of error, Hill contends that the trial court deprived him of a fair trial by erroneously giving a jury instruction regarding flight. Hill contends that the court erred in giving the instruction because there was no evidence that he attempted to flee or avoid apprehension.

**{¶48}** A court's instructions to the jury should be addressed to actual issues in the case as posited by the evidence and the pleadings. *State v. Guster*, 66 Ohio St.2d 266,

271, 421 N.E.2d 157 (1981). We review a trial court's issuance of a jury instruction for an abuse of discretion. *State v. Williams*, 8th Dist. No. 90845, 2009-Ohio-2026, ¶ 50. An abuse of discretion in this context occurs when the instruction is not supported by the evidence. *State v. Ponce*, 8th Dist. No. 91329, 2010-Ohio-1741, ¶ 45.

{¶49} This court has previously defined flight as "some escape or affirmative attempt to avoid apprehension." *State v. Wesley*, 8th Dist. No. 80684, 2002-Ohio-4429, ¶ 19. It is not an abuse of discretion for a trial court to give a jury instruction on flight and consciousness of guilt if there is sufficient evidence presented at trial that the defendant attempted to avoid apprehension. *State v. Kilpatrick*, 8th Dist. No. 92137, 2009-Ohio-5555, ¶ 16; *State v. Benjamin*, 8th Dist. No. 80654, 2003-Ohio-281, ¶ 31.

{¶50} In this case, Taylor testified that he saw Hill run between his house and another after he shot Spence. Ester testified that he saw Hill outside arguing with Spence before he heard the gunshots and that when he came out of his house immediately after hearing the shots, Hill was gone. Accordingly, the evidence presented at trial provided a sufficient basis for a flight instruction.

{¶51} The fifth assignment of error is therefore overruled.

F.     Sentencing Issues

{¶52} In his sixth assignment of error, Hill argues that his sentence is contrary to law. In his seventh assignment of error, Hill contends that the trial court improperly gave him a longer sentence because he did not testify at trial or express remorse at

sentencing. Because we are remanding for resentencing, these assignment of errors are overruled as moot.

**{¶53}** Hill's aggravated murder conviction is vacated, the conviction is modified to murder, and the matter is remanded for resentencing.

It is ordered that the parties share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed as modified, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
TIM McCORMACK, J., CONCUR