[Cite as *State v. Elder*, 2017-Ohio-292.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104392**

---

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# QUENTIN T. ELDER

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-601384-B

**BEFORE:** Keough, A.J., Kilbane, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** January 26, 2017

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
820 West Superior Avenue, Suite 800
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: John Farley Hirschauer
        Melissa Riley
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, A.J.:

{¶1} Defendant-appellant, Quentin T. Elder ("Elder") appeals from the trial court's judgment finding him guilty of discharge of a firearm on or near prohibited premises and sentencing him to 11 years in prison plus costs. We affirm Elder's conviction but reverse for resentencing to determine whether the imposition of court costs is appropriate in this case.

I. Procedural and Factual Background

{¶2} Elder and his codefendant, Christian Potts (who is Elder's step-brother), were indicted for attempted murder in violation of R.C. 2903.02(A) with firearm specifications; two counts of felonious assault in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2) with firearm specifications; and discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3) with firearm specifications. Potts was also indicted for illegal conveyance of a deadly weapon into a detention facility in violation of R.C. 2921.36(A)(1). Both defendants pleaded not guilty and the case proceeded to a jury trial.

{¶3} The indictments arose out of an incident that occurred on November 20, 2015. A few months prior to the incident, Potts's and Elder's friend Terrell Sherron was shot and killed; rumors were that he was killed by an individual named Saquon.

{¶4} S.S., who was 14 years old at the time of the incident, testified that he was at his girlfriend's house, in her bedroom, at approximately 7 p.m. on November 20, 2015. When his girlfriend's mother came home unexpectedly, his girlfriend told him he had to

leave, so he climbed out the window and down the fire escape. His girlfriend's mother came outside and chased him down the street, loudly calling his name, which sounds very similar to "Saquon."

{¶5} S.S. testified that he ran away, but then, as he was walking down East 71st Street, a gray Chevy Impala screeched to a stop by him, and someone holding a gun got out of the backseat of the car. S.S. ran into a nearby field and hid among some trees. S.S. testified that the individual with the gun chased him into the field looking for him, but never found him.

{¶6} When he thought the coast was clear, S.S. came out of the field and began walking down Melrose Avenue. As he approached East 71st Street, S.S. saw three males turn the corner from 71st Street and begin walking toward him. S.S. recognized one of the males as his friend C.S. S.S. had seen the other two males, Slingshot and Dolo (later identified as Potts), around the neighborhood. Potts asked S.S. what neighborhood he was from, and Slingshot asked him if his name was Saquon. S.S. told them he was not Saquon and that he was not from the area. C.S. told the two men that S.S. was "cool" and not the man they were looking for.

{¶7} S.S. testified that Potts then shot him in his eye. The three males ran away as S.S. fell to the ground. S.S. said that a woman got out of her car to help him but then got back in her car and drove away after shots were fired into the air. Potts and C.S. then came back, and Potts shot S.S. again, this time in his jaw. The two males then ran away.

{¶8} The police immediately received multiple 911 calls about the shooting, and they responded to the scene. S.S. was rushed to the hospital, where doctors performed emergency life-saving surgery. Dr. Anne Kim testified at trial that S.S. lost an eye as a result of the shooting, and that a bullet is still lodged at the top of his spine.

{¶9} The 911 calls were played for the jury. In one call, an anonymous caller reported seeing a male firing a gun into the air. The caller described the male as wearing a white-striped shirt and a black jacket with a white stripe on it. The caller reported that the male was getting into a gray Impala that was parked around the corner from where the shooting occurred. The caller said the Impala had a spoiler on the back and only one headlight. The caller stated that he was following the Impala and it was turning onto a one-way street behind a school.

{¶10} Cleveland police officer Fridich Kaufmann testified that he and his partner responded to the scene of the shooting, where they found a shell casing and a bullet. They also spoke with S.S. In light of what S.S. told them, Kaufmann and his partner began looking for the gray Impala. After being advised of the 911 call about where the Impala had gone, they found the Impala parked in a driveway on Everett Court, a one-way street behind Wade Park Elementary School and only a mile and a-half from where the shooting occurred. Kaufmann testified that the night was cold but the hood of the Impala was warm, indicating that it had recently been driven. The police found Potts's identification and an obituary for Terrell Sherron in the car; they found the keys to the car on Elder.

**{¶11}** Kaufmann said that there were four men sitting on or standing around the porch of the house where the Impala was found. One man was Potts; another was Elder, who was wearing the clothes described by the anonymous 911 caller. Potts denied having any weapons, but the police found three guns on or near Elder. The four men were arrested and tested at the jail for gunshot residue. Elder tested positive; no gun residue was found on Potts's hands.

**{¶12}** When Potts was patted down after being processed and booked into jail, a corrections officer found a .25 caliber Raven Arms semiautomatic pistol in Potts's underwear. Detective James Kooser testified that the casing found at the scene where S.S. was shot matched the .25 caliber pistol found on Potts. S.S. subsequently identified Potts in a photographic array as the man who shot him.

**{¶13}** The trial court denied Potts's and Elder's Crim.R. 29 motions for acquittal, and the jury subsequently found Potts guilty as indicted. It found Elder not guilty of attempted murder and felonious assault, but guilty of firing a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3).

**{¶14}** The trial court sentenced Elder to 11 years in prison and five years of postrelease control. Although it did not mention court costs at sentencing, the journal entry of sentencing ordered Elder to pay costs equal to the cost of prosecution. This appeal followed.

## II. Law and Analysis

A.    Sufficiency and Manifest Weight of the Evidence

**{¶15}** In his first assignment of error, Elder contends that the trial court erred in denying his Crim.R. 29(A) motion for acquittal because there was insufficient evidence that he discharged a firearm on or near a prohibited premises. In his second assignment of error, Elder contends that his conviction is against the manifest weight of the evidence.

**{¶16}** A Crim.R. 29 motion challenges the sufficiency of the evidence. The test for sufficiency is whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 13. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 NE.2d 541 (1997).

**{¶17}** Elder contends that there was insufficient evidence to support his conviction because Potts was identified as the shooter, and there is "no evidence whatsoever" that he shot a gun at the scene. We disagree.

**{¶18}** "Proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991). S.S.

testified that a gray Impala stopped, and someone got out of the car and chased him before he was shot. He testified further that after he was shot, he heard shots fired in the air, and then Potts returned and shot him again. A 911 caller reported that he saw a male who was wearing a white-striped shirt and a dark jacket with a white stripe on it shooting in the air. The 911 caller also reported that after shooting in the air, the male got into a gray Impala, and that the Impala then drove onto a one-way street. Thirty minutes later, the police found the gray Impala parked on Everett Court, a one-way street only a mile and a-half from where S.S. was shot. Although the night was cold, the hood of the Impala was warm, indicating that it had been driven recently. Elder had the keys to the Impala on his person. He also had three guns on or near his person. He was also wearing a white-striped shirt and a dark jacket with a stripe on it, just as the 911 caller had described. He was tested at the jail for gun residue on his hands, and the test came back positive, indicating that he had recently fired a gun. Viewing this evidence in a light most favorable to the prosecution, it is apparent that the state produced sufficient circumstantial evidence to support Elder's conviction.

{¶19} Nor is Elder's conviction against the manifest weight of the evidence. In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598 at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered."
*Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the weight of the evidence only in the "most exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶20} This is not that exceptional case. The 911 caller reported that he saw a male shooting into the air, and that the male then got into a gray Impala and drove it down a one-way street behind a school. Thirty minutes later, the police found the Impala parked next to a house on Everett Court, a one-way street behind Wade Park Elementary School. Elder was sitting on the porch of the house; he was wearing the exact clothes described by the 911 caller. The police found three guns on or near Elder's person. At the jail, he was tested for gun residue on his hands. The test came back positive, meaning that he had recently fired a gun. Although, as Elder points out, there was no eyewitness testimony that he shot a gun into the air, the circumstantial evidence against him is overwhelming. The jury did not lose its way in convicting him of firing a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3). Accordingly, the first and second assignments of error are overruled.

B.    Sentencing

{¶21} In his third assignment of error, Elder contends that his sentence should be vacated because the trial court failed to mention the findings required by R.C. 2929.11 and 2929.12 on the record before sentencing him. He also contends that his 11-year

sentence was excessive and improper because he was acquitted of attempted murder and felonious assault against S.S. Elder's arguments are wholly without merit.

{¶22} Appellate review of felony sentences is governed by R.C. 2953.08, which provides that when reviewing felony sentences, a reviewing court may increase, reduce, or modify a sentence, or vacate and remand the matter resentencing, only if the court clearly and convincingly finds that either the record does not support the sentencing court's statutory findings or the sentence is contrary to law. A sentence is contrary to law if it falls outside the statutory range for the particular degree of offense, or the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and 2929.12. *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13.

{¶23} Under R.C. 2929.11(A), a sentence imposed for a felony shall be reasonably calculated to achieve two overriding purposes of felony sentencing: (1) to protect the public from future crime, and (2) to punish the offender using the minimum sanctions the court determines will accomplish that purpose. Furthermore, the sentence shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

{¶24} R.C. 2929.12 sets forth the seriousness and recidivism factors a sentencing court should consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. It provides a non-exhaustive list

of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

{¶25} Elder assert that his sentence is defective because the trial court did not make the specific findings required by R.C. 2929.11 and 2929.12 on the record at sentencing, and "[i]n fact, the trial court never specifically mentioned either R.C. 2929.11 or 2929.12 throughout the entire sentencing hearing."

{¶26} The trial court is not required, however, to affirmatively state on the record at sentencing that it considered the R.C. 2929.11 and 2929.12 sentencing factors; consideration of the factors is presumed unless the defendant affirmatively shows otherwise. *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 11, citing *State v. Stevens*, 1st Dist. Hamilton No. C-130278, 2013-Ohio-5218, ¶ 12. *See also State v. Gay*, 8th Dist. Cuyahoga No. 103641, 2016-Ohio-2946, ¶ 23 (a trial court is not required to make specific findings regarding R.C. 2929.11 and 2929.12 nor required to specifically mention or reference the sentencing statutes during the sentencing hearing). A trial court's statement in its journal entry that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under the sentencing statutes. *State v. Clayton*, 8th Dist. Cuyahoga No. 99700, 2014-Ohio-112, ¶ 9.

{¶27} The trial court's journal entry of sentencing states that "[t]he court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11." We find the trial court's statement sufficient to

demonstrate that it considered the required sentencing factors of R.C. 2929.11 and 2929.12. Elder's mere assertion that the trial court did not do so is insufficient, without more, to demonstrate otherwise.

{¶28} Elder also contends that his 11-year sentence was arbitrary, capricious, and excessive because the crime he committed was "absolutely not related to the shooting of S.S.," and the trial court sentenced him for injuries caused to S.S. by Potts, and not by him. We find the trial court sentenced Elder appropriately.

{¶29} Count 4 of the indictment charged that Elder "did discharge a firearm upon or over a public road or highway and the violation caused serious physical harm to a person John Doe." Thus, in finding Elder guilty of Count 4, the jury found not only that he discharged a firearm into the air but that he also caused serious physical harm to S.S. Accordingly, in sentencing Elder, the trial court appropriately considered the severity of S.S.'s injuries resulting from the crime. And, although Elder was not convicted of attempted murder or felonious assault, the record demonstrates Elder's complicity in Potts's shooting of S.S. Indeed, the anonymous 911 call makes it clear that when Potts shot S.S., Elder stood on the corner shooting his gun into the air to scare off anyone who might help S.S., including the woman who stopped her car but then drove away after the shots were fired.

{¶30} Although Potts shot S.S., Elder was complicit in causing serious physical harm to S.S., and the trial court properly considered Elder's complicity in causing S.S.'s devastating physical injuries when it sentenced him. The sentencing range for Elder's

conviction was a mandatory minimum of six to fourteen years in prison. Given S.S.'s permanently impaired physical condition, the trial court's sentence was more than appropriate. The third assignment of error is overruled.

C.     Court Costs

**{¶31}** Although the court did not mention court costs at sentencing, its journal entry of sentencing ordered "judgment against the defendant in an amount equal to the costs of prosecution." In his fourth assignment of error, Elder contends that the trial court erred by imposing court costs because it failed to advise him of costs at sentencing. In his fifth assignment of error, Elder asserts that before imposing any costs, the trial court should have first determined his ability to pay. The state concedes that the trial court did not mention court costs at sentencing but imposed them in its journal entry.

**{¶32}** R.C. 2947.23(A)(1) governs the imposition of court costs and provides, in relevant part, that "[i]n all criminal cases * * * the judge * * * shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." Thus, a sentencing court must include in the sentence the costs of prosecution and render a judgment against the defendant for costs, even if the defendant is indigent. *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 817 N.E.2d 393, ¶ 8.

**{¶33}** In *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, the Ohio Supreme Court considered whether a trial court may impose court costs under R.C. 2947.23 in its sentencing entry when the trial court did not impose those costs during the sentencing hearing. *Id.* at ¶ 1. The court held that it is reversible error under Crim.R.

43(A) for the trial court to impose court costs in its sentencing entry when it did not impose those costs in open court at the sentencing hearing. *Id*. at ¶ 22. The court found that a defendant is harmed by the trial court's error in such cases because he is "denied the opportunity to claim indigency and to seek a waiver of the payment of court costs before the trial court." *Id*. The court determined that the remedy in such a situation is a limited remand to the trial court to allow the defendant to seek a waiver of court costs. *Id.* at ¶ 23.

{¶34} In this case, the record reflects that the trial court did not mention costs at sentencing, but then imposed court costs in its journal entry of sentencing. The record also reflects that after sentencing Elder, the trial court determined that he was indigent and appointed appellate counsel. Accordingly, we reverse the part of the trial court's judgment that imposed court costs and remand the matter for the limited purpose of allowing Elder to move the trial court for a waiver of payment of court costs. The fourth and fifth assignments of error are sustained.

{¶35} Judgment affirmed in part; reversed in part; and remanded.

It is ordered that the parties share equally in the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the the trial court.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MARY EILEEN KILBANE, J., and
ANITA LASTER MAYS, J., CONCUR