[Cite as *State v. Binford*, **2018-Ohio-90.**]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 105414

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CARLOS BINFORD

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-610418-A

**BEFORE:** Keough, P.J., E.A. Gallagher, A.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** January 11, 2018

**ATTORNEY FOR APPELLANT**

Allison S. Breneman
1220 West 6th Street, Suite 303
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Kelly Needham
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Defendant-appellant Carlos Binford ("Binford") appeals from the judgment of the common pleas court, rendered after a jury verdict, finding him guilty of felonious assault, having weapons while under disability, and improperly handling firearms in a motor vehicle. Binford contends that his convictions were not supported by sufficient evidence and are against the manifest weight of the evidence; his trial counsel was ineffective; and the trial court abused its discretion in sentencing him to 11 years in prison. Finding no merit to the appeal, we affirm.

## I. Facts and Procedural Background

{¶2} A grand jury indicted Binford in multicount indictment as follows: Count 1, felonious assault in violation of R.C. 2903.11(A)(1); Count 2, felonious assault in violation of R.C. 2903.11(A)(2); Count 3, having weapons while under disability in violation of R.C. 2923.13(A)(3); and Count 4, improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B). The felonious assault charges carried one- and three-year firearm specifications. Binford pleaded not guilty, and the case proceeded to trial.

{¶3} Deandre Rencher ("Rencher") testified that on June 26, 2016, he called his ex-girlfriend, Shennell Owens ("Owens"), and told her that he wanted to speak to Binford, her current boyfriend, because several people had told him that Binford had broken out the window in Rencher's car several months earlier. Rencher then called his

son, Deandre Ward ("Ward") to meet him at Owens's apartment "to watch his back." At that time, Rencher only knew Binford's name as "Los."

{¶4} Binford and his cousin, Maurice Henderson, met Rencher and Ward at Owens's apartment. Rencher and Binford argued about the window. Rencher told Binford that he owed him $300, the cost to repair the window, and Binford denied breaking the window. Eventually everyone left.

{¶5} Rencher said that later that day, he went to a park and met up with a friend of his. As they sat on a park bench talking, he saw a car park on a street next to the park. Rencher saw Binford and two other men, one of them Henderson, get out of the car. Rencher testified that Binford then walked up to him and said, "I ain't got nothing for you man," which Rencher understood to mean that Binford was not going to pay him for the window. Rencher then stood up and began fighting with Binford. He said he eventually pinned Binford against a nearby tree but the other men pulled him and Binford apart, and Binford ran to his car.

{¶6} Rencher began walking toward Binford's car. He testified that as he reached the street, he saw Binford open the back door of his car, reach in the back seat, pull out a gun, and shoot twice in the air. Binford then got in the driver's seat of his car.

{¶7} Rencher said that as he turned around, he noticed his son Ward fighting with Henderson. He saw Henderson run away but then fall. Ward ran after him. As Ward neared Henderson, Rencher saw Binford driving his car up the street. Rencher said that the passenger window of Binford's car was open and as Binford drove by

Henderson and Ward, he saw Binford "hanging out the window shooting." Rencher said he heard at least five shots. Rencher then heard Ward say, "Dad, I'm hit," and he ran over to Ward. Henderson jumped off the ground, ran to Binford's car and got in, and they drove away. Rencher testified that several people who were at the park told him Binford's name, and Rencher gave the name to the police when they arrived at the scene.

{¶8} Ward testified that there were "just words" but no physical altercation when Rencher confronted Binford at Owens's apartment earlier in the day about the broken window. Ward said that later that day, he went to the park to meet his father to borrow $20 from him. He testified that as he parked his car, he saw his father standing in the middle of the street, his shirt ripped and his neck bleeding. Ward also saw Binford, who was getting in his car, and Henderson, who was standing next to Binford's car.

{¶9} Ward testified that he went up to Henderson and asked him what was going on. According to Ward, he and Henderson "locked up" and tried to slam each other to the ground. As they were fighting, Binford began pulling away. Henderson broke loose from Ward and began running toward the car but then fell down. Ward testified that he ran after Henderson and, as he reached him and was about to kick him, he heard about five shots. Ward said he looked up, saw Binford's hand "hanging out the window," and felt that he had been shot. At the same time, Henderson got up, ran toward Binford's car and got in, and the car pulled away.

{¶10} Ward testified that he told the police on the scene that he did not know who shot him because he did not know Binford's name. Later, after he learned Binford's

name from his father, he called the police and gave them the name. Cleveland police detective John Kraynik testified that he showed a photo lineup to Ward, who picked Binford out of the lineup. Ward told Kraynik that he was 100 percent positive of his identification.

{¶11} Owens testified that when Rencher was arguing with Binford at her apartment, she told him that he knew that Binford had not broken his window, and that he was merely trying to get back with her by causing problems with Binford. She concurred that everyone left before there was any physical altercation.

{¶12} At the close of the state's evidence, Binford moved for Crim.R. 29 acquittal, which the trial court denied.

{¶13} Henderson testified in Binford's defense. He said that he was with Binford at Owens's apartment earlier in the day on June 26, 2016, and that he spent most of the day with Binford. He said that Binford went up to Rencher at the park and tried to have a conversation with him but the two men started fighting. Henderson admitted that he fought with Ward when Ward showed up at the park. He said that as he was fighting with Ward, he heard shots, so he began running toward Binford's car. He said he fell but then got up and ran to Binford's car, and when he got in, Binford drove away.

{¶14} Henderson testified that no shots were fired from the car as they drove away. He testified further that he never saw a gun in Binford's car that day, and he denied that Binford retrieved a gun from his car at the park or that he shot in the air or at anyone.

Henderson acknowledged that as a prior felon, he is not allowed to carry or be around guns, and said that he would never have gotten in Binford's car if Binford had a gun.

{¶15} The trial court denied Binford's renewed Crim.R. 29 motion, and the case went to the jury, who found Binford guilty as indicted. The trial court sentenced him to seven years each on the felonious assault charges, plus three years for the firearm specification, to run concurrent. The court sentenced him to twelve months each on the having weapons while under disability and improperly handling firearms in a motor vehicle charges, to run concurrent to each other but consecutive to the felonious assault charges, for a total sentence of eleven years. This appeal followed.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶16} In his second assignment of error, Binford contends that his convictions were not supported by sufficient evidence.

{¶17} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶18} In Count 1, Binford was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides that no person shall knowingly cause physical harm to

another. In Count 2, Binford was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides that no person shall knowingly cause or attempt to cause physical harm to another by means of a deadly weapon.

{¶19} Binford contends that his convictions for these offenses were not supported by sufficient evidence because Ward and Rencher's statements were biased and therefore not credible, and were inconsistent with each other. He further contends that Henderson's testimony contradicts Ward and Rencher's testimony.

{¶20} But in a sufficiency analysis, this court does not make determinations of credibility. *State v. Wilson*, 8th Dist. Cuyahoga No. 92148, 2010-Ohio-550, ¶ 52. Rather, we decide based on the evidence presented whether any rational trier of fact could have found the defendant guilty. *Id.* In light of Ward and Rencher's testimony, a rational trier of fact could have concluded that Binford knowingly caused physical harm to Ward by means of a deadly weapon.

{¶21} In Count 3, Binford was convicted of having weapons while under disability in violation of R.C. 2923.13(A)(3), which provides that no person shall knowingly have, acquire, carry, or use a firearm if the person has been convicted of a felony offense involving the illegal possession, use, sale, distribution or trafficking of any drug of abuse. Binford and the state stipulated to Binford's prior conviction for drug possession in violation of R.C. 2925.11, a fifth-degree felony. Nevertheless, Binford contends that the state's evidence was not sufficient because the state did not produce any physical evidence that he possessed a firearm.

**{¶22}** Binford's argument is without merit. Physical evidence is not required to sustain a conviction. *State v. Lopez*, 8th Dist. Cuyahoga No. 94312, 2011-Ohio-182, ¶ 62, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus. "Proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence or any combination of these three classes of evidence." *Jenks* at 272. Here, Ward and Rencher's testimony, if believed, is sufficient to establish that Ward had a gun in his possession.

**{¶23}** In Count 4, Binford was convicted of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), which states that "no person shall knowingly transport or have a loaded firearm in a a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." Binford contends that his conviction for improperly handing firearms in a motor vehicle was not supported by sufficient evidence because Henderson testified that he did not see Binford in possession of a firearm and that he would not have gotten in Binford's vehicle if he had seen a gun. Binford also contends the evidence was insufficient because Henderson testified that the shots were fired before he or Binford got in the car.

**{¶24}** But Rencher testified that he saw Binford "hanging out the window shooting" as he drove by Ward and Henderson, and that he heard five shots. Ward likewise testified that he saw Binford's arm "hanging out the window" and that he heard five shots and then was hit. This testimony, if believed, is sufficient to establish that Binford had a loaded firearm in his car.

**{¶25}** The second assignment of error is overruled.

**B.     Manifest Weight of the Evidence**

**{¶26}** A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 32. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 388.

**{¶27}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight given to the evidence are primarily matters for the trier of fact to decide. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. Thus, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances where the evidence presented at trial weighs heavily against the conviction. *Thompkins* at 388.

**{¶28}** In his first assignment of error, Binford contends that his convictions are against the manifest weight of the evidence because Rencher and Ward were not credible witnesses because they were biased against him. He argues that Rencher was trying to get back with Owens by causing problems with him, and thus would have had a good reason to lie and accuse him of shooting his son. He further contends that Henderson contradicted Ward and Rencher's testimony, and there was no physical evidence linking him to the shooting.

**{¶29}** The trier of fact, however, is free to accept or reject any or all of the testimony of any witness. *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16. The jury heard Ward and Rencher's account of the shooting, as well as Henderson's testimony contradicting their version of events. The jury also heard Owens's testimony that Rencher was trying to get back with her by causing problems with Binford, as well as Henderson's testimony that Binford is his cousin and he did not want to see him go to prison. The jury is in the best position to weigh the credibility of the witnesses, and apparently decided that Ward and Rencher were more credible than Henderson. And as discussed above, there is no requirement that the state produce physical evidence that Binford possessed a gun.

**{¶30}** We do not find that in considering the evidence and the credibility of the witnesses, the jury lost its way in convicting Binford. This is not the exceptional case where the evidence weighs heavily against the conviction. Accordingly, the first assignment of error is overruled.

## C.    Ineffective Assistance of Counsel

**{¶31}** Patrolman Frank Garmbach testified at trial that he responded to the scene of the shooting on June 26, 2016, and that he turned his body camera on when he exited his patrol car.  He said that when he arrived, he approached Rencher, who was applying pressure to Ward's leg to stop the bleeding.

**{¶32}** The record reflects that during his cross-examination of Rencher, defense counsel asked Rencher about statements he made to the police on the video.  Counsel asked Rencher if he remembered telling an officer at the scene "that you were fighting somebody, and somebody else drove up and shot your son in the leg?"  Rencher said he did not remember making this statement.  Defense counsel also questioned Rencher regarding whether he had told the police that Ward chased Binford to his car, and that Binford then got a gun out of the car and shot him.  When Rencher denied that Ward had chased Binford to his car, counsel questioned, "[s]o if that were to be on the body cam, that's not correct?'  Rencher then stated, "That's not correct."

**{¶33}** In his third assignment of error, Binford contends that his trial counsel failed to put on an adequate defense because he did not introduce the body camera video into evidence and thus could not refer in closing argument to Rencher's alleged inconsistent statements on the video.

**{¶34}** To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance.  *State v. Drummond*, 111 Ohio St.3d 14,

2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. We find no prejudice.

{¶35} The record reflects that counsel asked Rencher about the alleged inconsistent statements during cross-examination, and thus the jury heard his testimony about the statements. The statements were not necessarily helpful to Binford's defense, however. Rencher's statement that "somebody" drove by and shot Ward as Rencher was fighting "somebody else" does not necessarily mean that the shooter was not Binford. And Rencher's alleged statement on the body camera video that Ward chased Binford to his car, where he pulled out a gun and shot Ward, is obviously not helpful to Binford. Accordingly, Binford has failed to demonstrate a reasonable probability that he would not have been convicted had defense counsel been able to refer during closing argument to the alleged inconsistent statements on the body cam video.

{¶36} The third assignment of error is therefore overruled.

## D. Sentencing

{¶37} Appellate review of felony sentences is governed by R.C. 2953.08, which provides that when reviewing felony sentences, this court may increase, reduce, or modify a sentence, or vacate and remand for resentencing if we clearly and convincingly

find that the record does not support the sentencing court's statutory findings, if applicable, or the sentence is contrary to law. R.C. 2953.08(G)(2). A sentence is contrary to law if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *State v. Price*, 8th Dist. Cuyahoga No. 104341, 2017-Ohio-533, ¶ 14.

{¶38} Binford concedes that his 11-year sentence is within the statutory range for the degree of his offenses, but he argues that the trial court did not consider the purposes and principles of felony sentencing in R.C. 2929.11 and the seriousness and recidivism sentencing factors in R.C. 2929.12. The record belies Binford's assertion.

{¶39} The trial court's journal entry of sentence states, "the court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11." These statements alone are sufficient to satisfy the trial court's obligations under the law. *State v. Clayton*, 8th Dist. Cuyahoga No. 99700, 2014-Ohio-112, ¶ 9. The trial court is not required to make any findings in support of the factors contained in R.C. 2929.11 or 2929.12. *Price* at ¶ 17, citing *State v. Gay*, 8th Dist. Cuyahoga No. 103641, 2016-Ohio-2946, ¶ 23.

{¶40} The transcript of the sentencing hearing also reflects that the trial court considered the purposes of felony sentencing set forth in R.C. 2929.11, which are to protect the public from future crime by the offender and to punish the offender using the minimum sanctions the court determines accomplishes these purposes. *State v. Vinson*,

8th Dist. Cuyahoga No. 103329, 2016-Ohio-7604, ¶ 60. The transcript also reflects that the trial court considered the seriousness and recidivism factors of R.C. 2929.12.

{¶41} When sentencing Binford, the trial court considered his criminal history, which the court noted dated back to 1988 and included prison terms for multiple drug trafficking offenses, multiple drug possession offenses, offenses for possession of criminal tools, aggravated robbery, and aggravated assault, as well as probation violations. The court also found that Binford was not a candidate for community control sanctions, and that prison was mandatory for the gun specifications. The court also noted that Binford was on postrelease control at the time of the offenses. Accordingly, it is apparent that the court considered the factors contained in R.C. 2929.11 and 2929.12, and imposed a sentence after weighing those factors as it deemed appropriate.

{¶42} Also, despite Binford's assertion otherwise, the trial court properly imposed consecutive sentences. Consecutive sentences may be imposed only if the trial court makes the required findings pursuant to R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659. Under the statute, consecutive sentences may be imposed if the trial court finds that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, and (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. In addition, the court must find that any of the following applies:

(1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense;

(2) at least two of the multiple offenses were committed as part of one or more courses of the conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of the courses of conduct adequately reflects the seriousness of the offender's conduct; or

(3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶43} In order to impose consecutive sentences, the trial court must both make the statutory findings mandated under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry. *Bonnell* at the syllabus.

{¶44} At the sentencing hearing, the trial court specifically found that consecutive terms were necessary to protect the public from future crime and not disproportionate to the seriousness of Binford's conduct and the danger posed to the public, and that at least two of the offenses were committed as part of one or more courses of conduct, and the harm caused by the multiple offenses was so great that a single prison term for the offenses would not adequately reflect the seriousness of Binford's conduct. The journal entry of sentencing contains those findings.

{¶45} The trial court did not err in imposing an 11-year prison sentence and, accordingly, the fourth assignment of error is overruled.

{¶46} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN A. GALLAGHER, A.J., and
MARY EILEEN KILBANE, J., CONCUR