[Cite as *State v. Tidmore*, 2019-Ohio-1529.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :

                                                  No. 107369

    v.                           :

LACYNTHIA TIDMORE,                :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART;
                  REMANDED
**RELEASED AND JOURNALIZED:** April 25, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-623164-A

---

### *Appearances:*

Mark A. Stanton, Cuyahoga County Public Defender,
Frank Cavallo, Assistant Public Defender, and Raymond
R. Froelich, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecutor, and
Anna M. Faraglia, Assistant Prosecuting Attorney, *for
appellee.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Lacynthia Tidmore appeals her maximum,

consecutive sentences after she pled guilty to one count of aggravated vehicular

homicide and one count of failure to stop after an accident in connection with a hit-and-run accident that resulted in the death of a nine-year-old girl. Tidmore contends that her sentences should be vacated because (1) the trial court failed to make all of the requisite findings for the imposition of consecutive sentences under R.C. 2929.14(C)(4), (2) the record does not support the imposition of consecutive sentences and (3) the trial court improperly considered uncharged criminal conduct in sentencing her to maximum, consecutive sentences. For the reasons that follow, we vacate Tidmore's consecutive sentences and remand for the trial court to again consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and, if so, to make all of the required findings on the record and incorporate those findings into its sentencing journal entry. We otherwise affirm the trial court.

**Factual and Procedural History**

{¶ 2} On November 9, 2017, D.M. was crossing the street on her way to her bus stop on Babbitt Road in Euclid, Ohio, when she was struck by a vehicle driven by Tidmore. Although there was substantial damage to her vehicle, such that Tidmore must have known that she hit someone or something, Tidmore did not stop, did not render aid to D.M. and did not call 911. Instead, she drove to a nearby gas station, then went about her daily activities. Although she observed the condition of her vehicle and would have seen brain or body matter on her vehicle at the gas station, Tidmore did not return to the scene or seek aid for D.M. Instead, she called her mother to take her to work because her vehicle was no longer driveable. Witnesses called 911 to report the accident, and D.M. was taken to the

hospital where she was placed on life support. She died approximately two weeks later. Police contacted Tidmore after her vehicle was spotted at the gas station, matching the description of the vehicle witnesses described as having been involved in the accident and having damage consistent with the accident. She was later arrested.

{¶ 3} On December 4, 2017, Tidmore was indicted on one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a) (Count 1) and one count of failure to stop after an accident in violation of R.C. 4549.02(A) (Count 2), both third-degree felonies. On April 26, 2018, Tidmore pled guilty to both offenses.

{¶ 4} The sentencing hearing was held on May 24, 2018. At the outset of the sentencing hearing, the trial court indicated that it had reviewed the presentence investigative report, the mitigation of penalty report, the mental health eligibility report and status updates regarding the pretrial supervision of Tidmore. The trial court then heard from Tidmore, her attorney, the state and several of D.M.'s family members.

{¶ 5} Tidmore apologized for "the life [she] took" and stated that she "regret[ted] the day" and "wished" that she could "go back and redo it." Tidmore's counsel asked for leniency in sentencing based on the fact that Tidmore was 23 years old, that she had "taken responsibility" by pleading guilty, that she had "almost no criminal record" and that she "did not wake up intending to commit any crimes" and was on her way to work "like any other day" when the accident occurred.

{¶ 6} D.M.'s great-aunt and mother described D.M., the accident and what might have been had D.M. lived. They spoke of the pain they experienced from losing D.M. and the lack of remorse exhibited by Tidmore following the accident. D.M.'s mother also described a recent altercation that allegedly occurred between D.M.'s family and Tidmore[1] and her family at a local grocery store. D.M.'s mother stated that Tidmore and her family had "torment[ed] [her]," "jumped [her]" and "beat [her] up" and that Tidmore had "laughed in [her] face like it was a joke."

{¶ 7} The state also read letters from D.M.'s father, grandmother and another family member, sharing memories of D.M. and describing the anger and sorrow they felt as a result of Tidmore's actions and the loss of D.M. D.M.'s family requested a "very harsh" sentence or "max punishment" for Tidmore's "heartless crime."

{¶ 8} The state briefly discussed the facts and circumstances surrounding the accident and requested that the trial court "impose the sentence that is commensurate with this crime * * * keeping all things equal" and recognizing that D.M. was "a nine-year-old little girl who had a lot to offer in this community."

{¶ 9} Prior to sentencing Tidmore, the trial court indicated that it had "considered all this information, all the principles and purposes of felony sentencing, [and] all the appropriate recidivism and seriousness factors."

---

[1] Tidmore was on house arrest while she was awaiting sentencing.

{¶ 10} The trial court sentenced Tidmore to 5 years in prison on Count 1 and 36 months in prison on Count 2, to be served consecutively, for an aggregate prison term of 8 years. The trial court also imposed three years' mandatory postrelease control and suspended Tidmore's driver's license for life.

{¶ 11} With respect to its decision to impose consecutive sentences, the trial court stated:

> This case and your actions and the way you've comported yourself during this case tends to show me that the family is correct, that you don't have real remorse. * * * And that consecutive sentences are necessary to punish you, to punish you. And it is not disproportionate to what you did in this case.
>
> And I'm further finding that the harm in this matter is so great or unusual that a single term just is not adequate to reflect the seriousness of what you did based on all the facts of this case, incorporating the information from the presentence investigation report and your conduct on that day. Therefore, I will impose consecutive sentences.

{¶ 12} The trial court incorporated these findings into its sentencing journal entry as follows:

> The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of defendant's conduct.

{¶ 13} Tidmore appealed her sentences, raising the following two assignments of error for review:

ASSIGNMENT OF ERROR I:
The trial court erred when it ordered consecutive sentences without support in the record for the requisite statutory findings under R.C. 2929.11, 2929.12 and 2929.14.

ASSIGNMENT OF ERROR II:
The trial court, by considering uncharged, unproven, and vague allegations of criminal conduct in sentencing her to maximum, consecutive sentences, deprived appellant of her liberty without due process and of her constitutional rights to a grand jury indictment, to trial by an impartial jury, to proof of the charges against her beyond a reasonable doubt, to confront the witnesses against her, and to otherwise present a defense.

**Law and Analysis**

{¶ 14} In her first assignment of error, Tidmore argues that the imposition of consecutive sentences was contrary to law because (1) the trial court failed to make the finding that consecutive sentences were not disproportionate to the danger she posed to the public, as required for the imposition of consecutive sentences under R.C. 2929.14(C)(4), and (2) the trial court's finding that "the harm in this matter is so great and unusual" to warrant consecutive sentences is not supported by the record.

{¶ 15} As this court explained *in State v. Johnson*, 8th Dist. Cuyahoga No. 102449, 2016-Ohio-1536, there are two ways a defendant can challenge consecutive sentences on appeal:

First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(b); *State v. Nia*, 2014-Ohio-2527, 15 N.E.3d 892, ¶ 16 (8th Dist.). Second, the defendant can argue that the record does not support the findings made under R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a); *Nia.*

*Id.* at ¶ 7.

{¶ 16} Pursuant to R.C. 2953.08(G)(2)(a), an appellate court may "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if it "clearly and convincingly" finds that "the record does not support the sentencing court's findings" under R.C. 2929.14(C)(4).

{¶ 17} In order to impose consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and (3) at least one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 18} The trial court must make the required statutory findings at the sentencing hearing and incorporate those findings into its sentencing journal entry.

*State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. To make the requisite "findings" under the statute, "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Id.* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). When imposing consecutive sentences, the trial court is not required to give a "talismanic incantation of the words of the statute." *Bonnell* at ¶ 37. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29. When considering whether the trial court has made the requisite findings, we must view the trial court's statements on the record "in their entirety." *See, e.g., State v. Blevins*, 2017-Ohio-4444, 93 N.E.3d 246, ¶ 21, 23 (8th Dist.).

{¶ 19} On the record before us, considering the trial court's statements in their entirety, we agree with Tidmore that the trial court did not make the complete proportionality finding required by R.C. 2929.14(C)(4).

{¶ 20} In this case, the trial court set forth all the requisite findings for imposing consecutive sentences in its sentencing journal entry. At the sentencing hearing, the trial court found that consecutive sentences are not "disproportionate to what [Tidmore] did in this case." This is sufficient to constitute a finding that consecutive sentences are not disproportionate to "the seriousness of the offender's conduct" under R.C. 2929.14(C)(4). However, as stated above, R.C. 2929.14(C)(4)

requires that the trial court make a finding at the sentencing hearing that consecutive sentences are not disproportionate to both (1) the seriousness of the offender's conduct and (2) the danger the offender poses to the public, prior to imposing consecutive sentences.

{¶ 21} We cannot discern from the entirety of the trial court's statements at the sentencing hearing that the trial court made the finding that consecutive sentences are not disproportionate to the danger Tidmore poses to the public. Because the trial court did not make the full proportionality finding required by R.C. 2929.14(C)(4) at the sentencing hearing, Tidmore's consecutive sentences are contrary to law. *See, e.g., Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 36-37; *State v. Lariche*, 8th Dist. Cuyahoga No. 106106, 2018-Ohio-3581, ¶ 25; *see also State v. Hairston*, 10th Dist. Franklin Nos. 17AP-416 and 17AP-417, 2017-Ohio-8719, ¶ 13-14.

{¶ 22} We cannot say, however, that the record clearly and convincingly does not support the trial court's finding that "the harm in this matter is so great and unusual" to warrant consecutive sentences. As this court explained in *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453 (8th Dist.), "[t]his is an extremely deferential standard of review":

> It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. It does not say that the trial judge must have clear and convincing evidence to support its findings. Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, the restriction is on the appellate court, not the trial judge.

*Id.* at ¶ 21.

{¶ 23} As detailed above, Tidmore hit and killed a nine-year-old girl while she was crossing the street on her way to her bus stop. The impact with Tidmore's vehicle broke every bone in D.M.'s face, broke both of her legs, knocked out all of her teeth, split her chin open and broke her neck. Tidmore did not stop after she hit D.M. and did not return to the scene or report the accident even after she saw the substantial damage to her vehicle at the gas station. This is not a case in which the record clearly and convincing does not support the trial court's finding that "the harm was so great or unusual that no single prison term * * * would adequately reflect the seriousness of the offender's conduct." R.C. 2929.14(C)(4).

{¶ 24} Accordingly, we sustain Tidmore's first assignment of error in part and overrule it in part.

{¶ 25} In her second assignment of error, Tidmore contends that the record shows that the trial court improperly considered uncharged criminal conduct in sentencing her to maximum, consecutive sentences. Specifically, she contends that that the trial court's statement at the sentencing hearing that "[t]his case and your actions and the way you've comported yourself during this case tends to show me that the family is correct, that you don't have real remorse" refers to the allegations by D.M.'s mother at the sentencing hearing that she had recently had an altercation with Tidmore and Tidmore's family at a grocery store. Tidmore further contends

that the trial court's "enhance[ment]" of her sentences based on this "uncharged and unproven criminal conduct" violated her constitutional rights.

{¶ 26} First, we do not believe, based on our review of the record, that the trial court's decision to impose maximum sentences was based on Tidmore's alleged altercation with D.M.'s mother at the grocery store. Second, even if the trial court considered the alleged grocery store incident when sentencing D.M., it would not be grounds for overturning Tidmore's sentences. As this court has previously held, uncharged criminal conduct can be considered by the court during sentencing so long as it is not the "sole basis" for the sentence. *See, e.g., State v. Steele*, 8th Dist. Cuyahoga No. 105085 2017-Ohio-7605, ¶ 10 ("Conduct by a defendant that does not result in a conviction, much less a criminal charge, can be considered by the court during sentencing."); *State v. Cooper*, 8th Dist. Cuyahoga No. 93308, 2010-Ohio-1983, ¶ 15 ("a defendant's uncharged yet undisputed conduct may be considered in sentencing without resulting in error when it is not the sole basis for the sentence"); *State v. Gray*, 8th Dist. Cuyahoga No. 91806, 2009-Ohio-4200, ¶ 13 ("[u]nindicted acts or not guilty verdicts can be considered in sentencing without resulting in error when they are not the sole basis for the sentence"); *see also State v. Ellis*, 2d Dist. Montgomery No. 25422, 2013-Ohio-2342, ¶ 15 ("[A] trial court may consider 'a broad range of information when sentencing a defendant,' including 'allegations of uncharged criminal conduct.'"), quoting *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 13, 15 (2d Dist.).

{¶ 27} Even if the trial court considered the alleged grocery store incident when sentencing Tidmore, the record is clear that the trial court's sentences were based, not solely on that alleged conduct, but also on the egregiousness of Tidmore's actions that led to the criminal charges in this case — her "actions that day," — i.e., hitting a young girl with her car, failing to stop, failing to report the incident to police, failing to obtain medical care for the child and, instead, proceeding with her normal daily activities as if nothing had happened.  As the trial court stated before sentencing Tidmore:

> [T]hese cases are always tragic.  When a life is lost, there's never a good reason.  There's never sense that can be found in what happened.  It's always senseless.
>
> When the death is a child, it's even more — more hurtful, more tragic, because of all the things that could have been. * * *
>
> And I completely understand how the hearts of the family members of [D.M.] are hardened with vengefulness and retribution, hatefulness, because of your actions, because of what you did, because you didn't stop.
>
> And you can see how it's so easy to read in all kinds of things in your mind because you didn't stop, because of your actions that day, because you walked away from your car after you saw the type of damage that was on your vehicle. * * *
>
> The legislature has determined what kind of consequences should follow when this type of act is committed, and I'm going to follow that legislative guidance.  It's all I can do.  It's all I can do.

{¶ 28} Although Tidmore contends "the alleged interaction she had with the child's family" was that "[o]nly * * * thing * * that could be considered a negative" with respect to "the way [Tidmore] comported [her]self during this case," there was

other information in the record from which the trial court could have reasonably concluded that Tidmore did not fully appreciate what she had done and was not truly remorseful for her actions. Indeed, the regret Tidmore expressed during her brief apology at the sentencing hearing seemed at least equally directed towards the impact her actions had on her own life as on D.M. and D.M.'s family:

> THE COURT: Ms. Tidmore what would you like to tell the Court?

> THE DEFENDANT: Well, I'm — I'm sorry that everything happened how it happened. Like, I regret the day. I wish I can go back and redo it, if I could.

> I mean, I'm — I'm sorry about the life that I took. And it haven't just changed the family life [sic], but it changed my life, like, completely.

> It's like I'm — I'm very — I'm really, really, really sorry about everything, like, everything. It's — it's something that I wish I could have — could go back and redo different. And I'm truly sorry.

{¶ 29} Tidmore's sentences were within the statutory range. The record reflects that the trial court considered both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the relevant sentencing factors set forth in R.C. 2929.12 when sentencing Tidmore. Tidmore's maximum sentences are not clearly and convincingly contrary to law, and we find no violation of due process or any other constitutional right in the trial court's imposition of maximum sentences on the record before us. We overrule Tidmore's second assignment of error.

## Conclusion

{¶ 30} Where a trial court has imposed consecutive sentences, but failed to make all of the requisite statutory findings, the proper remedy is to vacate the consecutive sentences and remand for resentencing. Accordingly, we vacate Tidmore's consecutive sentences and remand to the trial court for the limited purpose of again considering whether consecutive sentences are appropriate under R.C. 2929.14(C)(4) and, if so, to make all of the required findings on the record and incorporate those findings into its sentencing journal entry. *See, e.g., State v. Wells*, 8th Dist. Cuyahoga No. 105723, 2017-Ohio-8738, ¶ 5-7; *State v. Ferrell*, 8th Dist. Cuyahoga No. 104047, 2016-Ohio-7715, ¶ 7-9.

{¶ 31} Affirmed in part; vacated in part; remanded.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MARY EILEEN KILBANE, A.J., and
MICHELLE J. SHEEHAN, J., CONCUR