[Cite as *State v. Wilkins*, 2019-Ohio-4061.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                         :

    Plaintiff-Appellee,            :

                                           No. 107982

    v.                              :

DAVID A. WILKINS,                      :

    Defendant-Appellant.            :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART;
                   REMANDED
**RELEASED AND JOURNALIZED:** October 3, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-628022-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Marc D. Bullard and Jeffrey Schnatter,
Assistant Prosecuting Attorneys, *for appellee.*

Joseph V. Pagano, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant David Wilkins appeals his sentences after he pled guilty to one count of reckless homicide, four counts of drug trafficking, one count of drug possession and one count of having weapons while under disability.

Wilkins contends that his sentences should be vacated because (1) the record does not support the imposition of individual maximum and consecutive sentences, (2) the trial court failed to make all of the requisite findings for the imposition of consecutive sentences under R.C. 2929.14(C)(4) and (3) the trial court improperly allowed evidence of uncharged acts to be introduced during the sentencing hearing. The state concedes that the trial court failed to make the proportionality finding required for the imposition of consecutive sentences. For the reasons that follow, we vacate Wilkins' consecutive sentences and remand the case for the trial court to consider (1) whether Wilkins' 8-year sentence on Count 13 should be served consecutively with his 36-month sentence on Count 18 under R.C. 2929.14(C)(4) and (2) if so, to make all of the required findings on the record and incorporate those findings into its sentencing journal entry. We otherwise affirm the trial court.

**Procedural History and Factual Background**

{¶ 2} In August 2017, Jacqueline Farmer purchased cocaine for herself and Christopher Menter from Wilkins. Menter was a friend of Wilkins and had known and purchased drugs from Wilkins for many years. Shortly after using the drugs Farmer had obtained from Wilkins, Menter became unconscious. He later died from a cocaine overdose.

{¶ 3} The police began investigating Wilkins and made several drug purchases out of his residence. On January 16, 2018, Wilkins was arrested following the execution of a search warrant at his home during which the police seized several illegal drugs including a significant quantity of cocaine, guns, money, cell phones, a

drug scale and other property. On February 8, 2018, Wilkins was indicted by a Cuyahoga County Grand Jury on one count of drug trafficking, four counts of drug possession, one count of having weapons while under disability and one count of possessing criminal tools (Cuyahoga C.P. No. CR-18-529253-B ("529253")).

{¶ 4} On April 19, 2018, a Cuyahoga County Grand Jury indicted Wilkins on charges of involuntary manslaughter (Count 1), corrupting another with drugs (Count 2), drug trafficking (Counts 3-4, 6-7, 10-11, 13), drug possession (Counts 5, 8, 12, 14-17, 20), possessing criminal tools (Counts 9 and 19) and having weapons while under disability (Count 18) (Cuyahoga C.P. No. CR-18-628022-A ("628022")). The charges related to Menter's death in August 2017 and other drug-related activities occurring on or about August 11-12, 2017, January 3, 2018, January 5, 2018, January 10, 2018 and January 16, 2018. Certain of the charges included a one-year firearm specification and/or forfeiture specifications relating to the guns, money, cell phones and other property seized in connection with the execution of the search warrant on January 16, 2018. Wilkins initially pled not guilty to all charges.

{¶ 5} The trial court dismissed 625158 without prejudice based on the superseding indictment in 628022, and the parties reached a plea agreement. On November 6, 2018, Wilkins withdrew his previously entered not guilty pleas and pled guilty to the following charges:

- Count 1 as amended, reckless homicide in violation of R.C. 2903.041, a third-degree felony;

- Count 3, drug trafficking in cocaine in amount less than five grams on or about August 11-12, 2017 in violation of R.C. 2925.03(A)(1), a fifth-degree felony;

- Count 6, drug trafficking in cocaine in amount less than five grams on or about January 3, 2018 in violation of R.C. 2925.03(A)(1), a fifth-degree felony;

- Count 10, drug trafficking in cocaine in amount less than five grams on or about January 10, 2018 in violation of R.C. 2925.03(A)(1), a fifth-degree felony;

- an amended Count 13, drug trafficking in cocaine in amount greater than 20 grams but less than 27 grams on or about January 16, 2018 in violation of R.C. 2925.03(A)(2), a second-degree felony;

- Count 16 as amended, drug possession of heroin on or about January 16, 2018 in violation of R.C. 2925.11(A), a fifth-degree felony and

- Count 18, having weapons while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony.[1]

Wilkins also pled guilty to the forfeiture specifications. In exchange for Wilkins' guilty pleas, the remaining counts were nolled. The trial court ordered a presentence investigation report and scheduled the sentencing hearing.

{¶ 6} The sentencing hearing was held on December 12, 2018. At the outset of the sentencing hearing, the trial court indicated that it had reviewed the presentence investigation report and Wilkins' motion to mitigate sentence. The trial

---

[1] Count 1 was amended from involuntary manslaughter in violation of R.C. 2903.04(A) to reckless homicide in violation of R.C. 2903.041(A); Count 13 was amended to delete the firearm specification and reduce the weight of the cocaine involved (from an amount greater than or equal to 27 grams but less than 100 grams to an amount greater than 20 grams but less than 27 grams); Count 16 was amended to delete the firearm specification.

court then heard from defense counsel, Wilkins' father, the state, Menter's brother and sister-in-law and Wilkins.

{¶ 7} Defense counsel stated that Wilkins was "basically renting a flophouse where people would just come by and get high," that "[t]here were a whole number of people in that house" and that "[t]here were a bunch of different drugs in the house." He indicated Wilkins grew up in an affluent neighborhood, had graduated from Solon High School and The Ohio State University and had a "cohesive family." Defense counsel described the circumstances surrounding Menter's overdose and asked for leniency in sentencing Wilkins based on the fact that Wilkins is 57 years old and has had a drug problem "for years and years and years." He noted that Wilkins' criminal history was limited to two prior drug possession cases, that all his drug screens since his arrest had been negative and that Wilkins took "responsibility" for the drugs that were in the house he was renting at the time police executed the search warrant. Defense counsel requested that the trial court impose a sentence in "low range of the mandatory term" and "run everything else concurrent."

{¶ 8} Wilkins' father indicated that "everything" defense counsel had said was "very accurate" and asked for mercy when sentencing Wilkins.

{¶ 9} Menter's brother, Rick Menter ("Rick"), disputed defense counsel's characterization of Wilkins. He stated that he had known Wilkins for more than 25 years and had previously purchased cocaine from him but "got away from all that" after his son was born. Rick stated that because Menter worked long hours, he was

not going to get drugs from someone other than Wilkins. Rick stated that he "begged" Wilkins repeatedly "to stop giving [drugs] to my brother" and to "leave my brother alone," but that Wilkins' response was that he was "providing a public service."

{¶ 10} Rick described Menter's personality, the pain he and his family experienced from losing Menter and the lack of remorse exhibited by Wilkins following Menter's death. Menter's sister-in-law described how she and her husband learned what had happened, spoke of the impact of Menter's loss on his children and read a letter one of Menter's daughters had posted on Facebook in which she shared memories of Menter and described her sorrow as a result of Menter's death. The family argued against a minimum sentence and stated that, "whatever these guys worked out," Wilkins "needs to do every single minute" and "get the full load."

{¶ 11} The state described Wilkins as "a prolific drug dealer." He indicated that when the search warrant was executed on Wilkins' residence, crack cocaine was cooking on the stove and there were "in excess of 60 grams of cocaine with numerous other drugs" in the house. He stated that when the detectives seized Wilkins' cell phone, they did a "cell phone dump" and found a video, recorded after Menter's death, of someone "falling out from a drug overdose." Over Wilkins' objection, the cell phone video was played for the trial court. The state argued that "a sentence in the range of eight to ten years would adequately reflect the harm caused, and the danger [Wilkins] presents to society."

{¶ 12} Wilkins stated that he was "sorry about what happened," that Menter was "a very good friend * * * [a]lmost like a best friend," that he saw him "almost every day" and that he "never had intended to cause his death at all." Wilkins denied that he was "some kind of money hungry drug dealer" or "a hard-core drug dealing menace to society they tryin' to make me out to be." He stated that the home he was renting "was more like kind of like a flophouse, but not really" and that he "welcomed in a lot of people who were struggling with their addiction and with their residency."

{¶ 13} Wilkins denied recording the video of the woman overdosing that was found on his cell phone and stated that he had attempted to revive her and ultimately convinced her and the man who was videotaping her to go to the Free Clinic to get Narcan to "to prevent anybody else's accidental death." Wilkins asked for "mercy" on his sentence.

{¶ 14} In response to Wilkins' statements, the trial judge remarked:

I'll agree with you on one other thing, Mr. Wilkins. From some of the more hard-core nasty drug dealers we see in our industry, I would agree with you that you are not that guy.

THE DEFENDANT: Thank you, your Honor.

THE COURT: I might take it that you are just the spoiled teenager who ain't never growin' up. Living off mom and dad, partying, doing what you want. Not having any responsibilities.

Let's be clear. At the end of the day, you're still a drug dealer. You could dress up however you want.

THE DEFENDANT: Yes, your Honor.

THE COURT: I'm not trying to argue the point with you, but I'm making my observations.

{¶ 15} Stating that he had "consider[ed] the purposes and principles set forth in felony sentencing," the trial court sentenced Wilkins to 36 months in prison on Counts 1 and 18, 12 months on each of Counts 3, 6, 10 and 16 and 8 years on Count 13. The sentences on Counts 1, 3, 6, 10 and 16 were ordered to run concurrently with each other and with Count 13. The 8-year sentence on Count 13 was ordered to run consecutive to the 36-month sentence on Count 18, resulting in an aggregate prison sentence of 11 years. The trial court also imposed three years' mandatory postrelease control.

{¶ 16} With respect to its decision to impose consecutive sentences, the trial court stated:

> On Count 13 there will be an eight-year sentence. And because I do find that this is a course of conduct, consecutive sentences are necessary to protect the public from future crimes, and really to punish you and send a message to other members of society that drug dealing and drug trafficking is not acceptable, and to the danger that you caused.
>
> Again, this is a course of conduct with respect to the trafficking, the ultimate that caused the death of this young man.
>
> And the rest of the drug trafficking that you continued to engage in that was part of these offenses, that no single prison sentence for any term of these offenses committed as part of this course of conduct would adequately reflect the seriousness of your conduct.
>
> So the sentence in count 13 will run consecutive to the other sentences for an aggregate sentence of 11 years.

{¶ 17} The trial court set forth its findings in support of the imposition of consecutive sentences in its December 12, 2018 sentencing journal entry[2] as follows:

> The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of defendant's conduct.

{¶ 18} Wilkins appealed his sentences, raising the following two assignments of error for review:

> ASSIGNMENT OF ERROR I
> Appellant's sentence is contrary to law because the record does not support the imposition of maximum sentences and a consecutive sentence on Count 13.

> ASSIGNMENT OF ERROR II
> The trial court erred by allowing other uncharged acts to be introduced during the sentencing hearing over appellant's objections and in violation of his constitutional due process rights.

**Law and Analysis**

{¶ 19} In his first assignment of error, Wilkins argues that his sentences are contrary to law and should be vacated because: (1) they are "beyond what is necessary to protect the public and punish the offender" and do "not comply with R.C. 2929.11 and 2929.12"; (2) the trial court failed to make all of the necessary

---

[2] On December 18, 2018, the trial court issued a nunc pro tunc journal entry, adding a provision ordering Wilkins to forfeit the agreed-upon items to the state.

findings to impose a consecutive sentence on Count 13 pursuant to R.C. 2929.14(C)(4) and (3) consecutive sentences are not necessary to protect the public and are "in excess of what is necessary to incapacitate the offender, deter him from committing future crime and to rehabilitate him."

**Standard of Review for Felony Sentences**

{¶ 20} When reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 21-23. ("R.C. 2953.08 specifically and comprehensively defines the parameters and standards — including the standard of review — for felony-sentencing appeals."). Pursuant to R.C. 2953.08(G)(2), an appellate court "may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if it "clearly and convincingly finds" either that the record does not support the sentencing court's findings or that the sentence is "otherwise contrary to law." A sentence is "contrary to law" if (1) the sentence falls outside the statutory range for the particular degree of offense or (2) the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12. *See, e.g., State v. Thomas*, 8th Dist. Cuyahoga No. 107116, 2019-Ohio-790, ¶ 22; *State v. Lariche*, 8th Dist. Cuyahoga No. 106106, 2018-Ohio-3581, ¶ 14. A matter is "clear and convincing" if it "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**Maximum Sentences**

{¶ 21} Pursuant to R.C. 2929.11, a court imposing a sentence for a felony must be guided by three "overriding purposes" of felony sentencing — (1) "to protect the public from future crime by the offender and others," (2) "to punish the offender" and (3) "to promote the effective rehabilitation of the offender" — while "using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The sentence imposed must be "reasonably calculated" to achieve these purposes "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 22} The sentencing court must consider various seriousness factors set forth in R.C. 2929.12(B) and (C) and recidivism factors set forth in R.C. 2929.12(D) and (E) in determining the most effective way to comply with the purposes of sentencing set forth in R.C. 2929.11.

{¶ 23} Wilkins argues that the trial court's imposition of maximum sentences on each of the counts to which he pled guilty was not supported by the record because he had no prior drug trafficking convictions and the trial judge had stated at the sentencing hearing that he "agree[d]" with Wilkins that Wilkins was not one of the "more hard-core nasty drug dealers we see in our industry." Wilkins asserts that the trial court "did not cite the relevant law and statutory provisions regarding [the] more and less seriousness factors as well as [the] more likely and

less likely to reoffend factors of R.C. 2929.12(B)-(E)" and argues that the trial court failed to give sufficient weight to the relevant mitigating factors, such as Wilkins' "compliance on court supervised release," his negative drug screens, his "minimal criminal history," his "sincere remorse," his "strong family support" and his "acceptance of responsibility" when sentencing him. Wilkins contends that his "clear and long standing drug addictions" "demonstrate his need for treatment" rather than "a long prison term" and that a two-year prison term would have been "adequate" to protect the public and punish him.

{¶ 24} Although the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors listed in R.C. 2929.12, the court is not required to use particular language, give reasons for its sentence or make specific findings on the record demonstrating its consideration of those purposes, principles and factors. *See, e.g., State v. Walker*, 8th Dist. Cuyahoga No. 107368, 2019-Ohio-996, ¶ 9; *Lariche,* 2018-Ohio-3581, at ¶ 17. A trial court's statement that it considered the required statutory factors is sufficient to fulfill its obligations under the sentencing statutes. *Walker* at ¶ 9.

{¶ 25} Based on the record in this case, we cannot say that Wilkins' individual sentences are clearly and convincingly contrary to law.

{¶ 26} Wilkins does not dispute that his individual sentences are within the statutory range. Further, it is clear that the trial court considered both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the relevant sentencing factors set forth in R.C. 2929.12 when sentencing Wilkins. At the outset

of the sentencing hearing, the trial court indicated that it had reviewed and considered both the presentence investigation report and Wilkins' motion to mitigate sentence. Although the trial court did not specifically reference R.C. 2929.11 and 2929.12 at the sentencing hearing, the trial judge expressly stated, prior to sentencing Wilkins, that he had "consider[ed] the purposes and principles set forth in felony sentencing." The trial court further stated in its sentencing journal entry that it "considered all required factors of the law" and that it found that "prison is consistent with the purpose of R.C. 2929.11." *See Thomas*, 2019-Ohio-790, at ¶ 25 (observing that "[u]nder our precedents, these statements alone are sufficient to satisfy the sentencing court's obligations" under R.C. 2929.11 and R.C. 2929.12), citing *State v. Binford*, 8th Dist. Cuyahoga No. 105414, 2018-Ohio-90, ¶ 39. Accordingly, the trial court satisfied its obligation under R.C. 2929.11 and 2929.12.

{¶ 27} Although Wilkins claims that he should have received lesser sentences because he took responsibility for his actions by pleading guilty and demonstrated "sincere remorse" following Menter's death, at the sentencing hearing, he did not even acknowledge — much less accept responsibility for — his role in contributing to the addiction of others and the harm he caused to other individuals and the surrounding community by engaging in drug trafficking. Instead, he repeatedly downplayed the seriousness of his actions:

> [T]hey try to paint me out as some kind of money hungry drug dealer. That's not what I was.  * * *
>
> I'm not that animal.  I would never push someone over the edge or — in fact, I used to tell them all the time, [d]on't tell me that you need

the drugs. It's not about needing it. If you want something, that's one thing. But needing it, I would not curtail that type of activity. That is not what I was involved in at all.

Again, I don't consider myself a detriment to society. I never would promote anyone who was not already an addict into doing drugs. I never had anything to do with anything * * *

I ask again for your mercy on my sentence because I'm not a hard-core drug dealing menace to society they tryin' to make me out to be.

{¶ 28} Further, even his role in the death of what Wilkins described as "a very good friend" did not discourage Wilkins from continuing to use and sell drugs. The drug possession count and three of the drug trafficking counts to which Wilkins pled guilty related to activities that occurred on January 3, 10, and 16, 2018 — nearly five months after Menter's overdose. The trial court made it clear that it did not accept Wilkins' attempt to minimize his actions: "Let's be clear. At the end of the day, you're still a drug dealer. You could dress up however you want."

{¶ 29} Accordingly, we affirm Wilkins' individual sentences.

**Consecutive Sentences**

{¶ 30} In order to impose consecutive sentences, a trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and (3) at least one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction

imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 31} The trial court must make the required statutory findings at the sentencing hearing and incorporate those findings into its sentencing journal entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. To make the requisite "findings" under the statute, "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Id.* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). When imposing consecutive sentences, the trial court is not required to give a "talismanic incantation of the words of the statute." *Bonnell* at ¶ 37. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29. When considering whether the trial court has made the requisite findings, we must view the trial court's statements on the

record "in their entirety." *See, e.g., State v. Blevins*, 2017-Ohio-4444, 93 N.E.3d 246, ¶ 23 (8th Dist.).

{¶ 32} Wilkins argues that his consecutive sentences should be vacated because the trial court failed to make the proportionality finding under R.C. 2929.14(C)(4), i.e., that consecutive sentences "are not disproportionate to the seriousness of [his] conduct and to the danger [he] poses to the public." The state concedes this error. We agree.

{¶ 33} Although the trial court set forth all the requisite findings for imposing consecutive sentences in its sentencing journal entry, it did not make a finding at the sentencing hearing that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public." Because the trial court did not make the proportionality finding required by R.C. 2929.14(C)(4) at the sentencing hearing, the imposition of consecutive sentences is contrary to law. *See, e.g., Bonnell* at ¶ 36-37; *Lariche*, 2018-Ohio-3581, at ¶ 25.

{¶ 34} Accordingly, we overrule Wilkins' first assignment of error in part and sustain it in part. We overrule Wilkins' first assignment of error to the extent it relates to Wilkins' individual sentences. We sustain the assignment of error to the extent it relates to the trial court's failure to make the requisite findings for the imposition of consecutive sentences.

**Consideration of Uncharged Conduct at Sentencing**

{¶ 35} In his second assignment of error, Wilkins argues that the trial court improperly considered uncharged criminal conduct in sentencing him to maximum, consecutive sentences. Specifically, he contends that the trial court's viewing of the cell phone video of another person overdosing in Wilkins' home and its inquiry regarding the original weight of the drugs charged violated Wilkins' due process rights.[3]

{¶ 36} "A sentencing court has wide discretion in considering factors necessary to craft a sentence[.]" *State v. Keslar*, 8th Dist. Cuyahoga No. 107088, 2019-Ohio-2322, ¶ 12. Even uncharged conduct can be considered by the court during sentencing so long as it is not the "sole basis" for the sentence. *See, e.g., State v. Tidmore*, 8th Dist. Cuyahoga No. 107369, 2019-Ohio-1529, ¶ 25-27; *State v. Steele*, 8th Dist. Cuyahoga No. 105085, 2017-Ohio-7605, ¶ 10 ("Conduct by a defendant that does not result in a conviction, much less a criminal charge, can be considered by the court during sentencing."); *State v. Gray*, 8th Dist. Cuyahoga No. 91806, 2009-Ohio-4200, ¶ 13 ("[u]nindicted acts * * * can be considered in sentencing without resulting in error when they are not the sole basis for the sentence"); *see also State v. Ellis*, 2d Dist. Montgomery No. 25422, 2013-Ohio-2342, ¶ 15 ("[A] trial court may consider 'a broad range of information when sentencing a

---

[3] The video was not included in the record on appeal.

defendant,' including 'allegations of uncharged criminal conduct.'"), quoting *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 13, 15 (2d Dist.).

{¶ 37} There is nothing in the record to suggest that the trial court considered the video recording, the original weight of the drugs charged or any other improper factor when deciding upon the sentences to impose on Wilkins. Although the trial judge asked Wilkins several questions regarding the incident depicted in the video[4] — "[s]ince [Wilkins] mentioned it" — the trial judge expressly stated that he would not take the video into consideration when sentencing Wilkins and would "certainly not penalize you for that at all." Likewise, the trial judge "promise[d]" defense counsel that "there will be no penalties" based on the weight of the drugs seized when the search warrant was executed "in excess of what [Wilkins] has pled to."

{¶ 38} Further, even if the trial court had considered the video or the original weight of the drugs charged when sentencing Wilkins, the record is clear that the trial court's sentences were based, not solely on that information, but also based on: (1) Wilkins' "course of conduct" in drug trafficking, (2) Wilkins' knowledge of the dangers of drug trafficking and drug use and the seriousness of the "danger caused" by Wilkins' actions, i.e., "the ultimate that caused the death of this young man," (3) the "rest of the drug trafficking that [Wilkins] continued to engage in" even after Menter's death, i.e., that even after his actions resulted in the death of his friend,

---

[4] The trial judge's questions related to why no one called 911 to assist the woman who was shown overdosing in the video.

nothing changed and Wilkins continued to sell drugs; (4) Wilkins' failure to appreciate the significance of his actions and (5) a desire "really to punish [Wilkins] and send a message to other members of society that drug dealing and drug trafficking is not acceptable."  Accordingly, we overrule Wilkins' second assignment of error.

**Conclusion**

{¶ 39}  Where a trial court has imposed consecutive sentences, but failed to make all of the requisite statutory findings, the proper remedy is to vacate the consecutive sentences and remand for resentencing on that issue only.  *See, e.g., Tidmore*, 2019-Ohio-1529, at ¶ 30; *State v. Wells*, 8th Dist. Cuyahoga No. 105723, 2017-Ohio-8738, ¶ 5-7; *State v. Ferrell*, 8th Dist. Cuyahoga No. 104047, 2016-Ohio-7715, ¶ 7-9.  Accordingly, we vacate the consecutive nature of Wilkins' sentences on Counts 13 and 18 only and remand to the trial court for the limited purpose of considering (1) whether the Wilkins' 8-year sentence on Count 13 should be served consecutively with his 36-month sentence on Count 18 under R.C. 2929.14(C)(4) and (2) if so, to make all of the required findings on the record and incorporate those findings into its sentencing journal entry.  We affirm in all other respects.

{¶ 40}  Judgment affirmed in part; vacated in part; remanded.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry out this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MARY EILEEN KILBANE, A.J., and
MARY J. BOYLE, J., CONCUR