[Cite as *State v. Swaney*, 2022-Ohio-3578.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2022-CA-20 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-430 |
| | : | |
| SARAH SWANEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of October, 2022.

. . . . . . . . . . .

IAN A. RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

MICHAEL R. PENTECOST, Atty. Reg. No. 0036803, 117 South Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Sarah Swaney appeals her convictions following a jury trial on charges of vehicular homicide and failing to stop after an accident.

{¶ 2} Swaney contends her convictions were against the manifest weight of the evidence. She also argues that the record does not support the trial court's consecutive-sentence findings.

{¶ 3} We conclude that the weight of the evidence supported both convictions and that the trial court's consecutive-sentence findings are not clearly and convincingly unsupported by the record. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} The present appeal stems from a fatal accident that occurred on April 5, 2021. On that date, Cassandra Smith was traveling west on State Route 41 when she saw a pedestrian ahead of her standing near the center line of the two-lane road. Although there was no stop signal or crosswalk at that location, Smith stopped to allow the pedestrian, Russell Morgan, to finish crossing in front of her. As Morgan neared the front passenger side of Smith's car, Swaney drove up behind Smith in a landscaping truck pulling a trailer. Swaney passed Smith's vehicle on the right shoulder of the road. As she did so, her trailer's wheel well struck Morgan, resulting in fatal injuries. Another driver, John Watkins, observed the accident.

{¶ 5} Swaney failed to stop after striking Morgan and proceeded to a landscaping job. Security-camera video at the job site captured her arrival with the truck and trailer shortly after the accident. Upon her arrival, Swaney immediately began examining the area of the trailer where Morgan had been hit. She picked up a piece of plywood that had

broken off of the trailer and tried to put it into place. Police later recovered the trailer, and testing of the plywood established that Morgan's blood was on it. Police also located the truck and noticed that a yellow beacon shown on the truck's roof in the security video had been removed. The truck was inspected by a mechanic, who determined that it was unfit for operation. Swaney's front brake lines were rusted through and "blown," there was no brake fluid in the reservoir, the rear brake pads were stuck to the calipers and inoperable, and the brake pedal "went to the floor" with no hydraulic pressure.

{¶ 6} Police interviewed Swaney following the accident. She admitted operating the truck despite having a suspended driver's license. She denied awareness that she had hit anyone. She claimed not to have heard or felt anything. According to one of the officers, she admitted looking in her rear-view mirror and seeing Morgan on the ground but thought he had fallen down in the street. Swaney also admitted having problems with her brakes and explained that she had passed Smith's vehicle on the right shoulder because she did not believe she could stop. At one point during the interview, Springfield police officer Chris Armstrong confronted Swaney about the security video. He stated that he thought she was lying about not knowing that she had hit someone because she immediately exited the truck and examined the damaged area. According to Armstrong, Swaney responded, "You're right."

{¶ 7} Swaney testified in her own defense at trial. When asked about her truck's brakes on direct examination, she responded that she drove the truck every day and that it was "just fine." Swaney denied "having difficulties" with her brakes. She explained that she applied her brakes when she saw Smith's stopped car and that it simply took a little

distance to slow down with the trailer. She testified that she saw Morgan crossing the opposing lane of traffic and saw him in front of Smith's vehicle as she went past. She denied looking back in her mirror and seeing Morgan on the ground. Swaney claimed there was no broken piece of plywood on her trailer when she arrived at her job site. With regard to the security video, she insisted that she was examining tools in her trailer. Swaney denied knowing that her driver's license had been suspended but admitted obtaining a state identification card in lieu of a driver's license. On cross-examination, she admitted telling police that she had "one bad brake line" and could not stop "with force." She then denied that the truck needed any brake work at the time of the accident and claimed that she had "had not one issue with it."

{¶ 8} Based on the evidence presented, the jury found Swaney guilty of vehicular homicide, a fourth-degree felony, with a specification that she was driving without a license. The jury also found her guilty of failing to stop after an accident, a third-degree felony. The trial court imposed consecutive prison terms of 18 months for vehicular homicide and 36 months for failure to stop. It also imposed an aggregate eight-year driver's license suspension.

## II. Analysis

{¶ 9} Swaney advances two assignments of error:

I. THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES.

{¶ 10} In her first assignment of error, Swaney contends the evidence did not support either conviction. She cites her testimony that she believed it was legal to pass on the right. She also cites her testimony about seeing Morgan walking in the street, breaking to slow down as she passed Smith's vehicle, and not seeing, hearing, or feeling any indication of a collision. Swaney additionally cites her trial testimony denying having any problems with her brakes. Finally, she cites the testimony of eyewitness John Watkins, who opined that there was "plenty of clearance" for her to pass Smith on the right and who described the incident as a "freak accident." With regard to the security-camera footage, Swaney contends it failed to prove her knowledge of the accident when it occurred. She also relies on her own testimony denying telling police she looked in her rear-view mirror and saw Morgan on the ground. In any event, Swaney notes that she purportedly told them she thought Morgan had fallen down in the street, not that she had hit him.

{¶ 11} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 12} With the foregoing standards in mind, we conclude that Swaney's convictions were not against the weight of the evidence. She was found guilty of vehicular homicide in violation of R.C. 2903.06(A)(3)(a) for negligently causing Morgan's death while operating a motor vehicle. The jury reasonably could have found criminal negligence, which involves a substantial lapse of care, based on her acts of operating a truck with defective brakes while pulling a trailer and passing a stopped car on the right shoulder after seeing a pedestrian walking across the street. Although Swaney disputed whether her brakes were defective, the jury reasonably could have relied on the State's evidence to find that they were not functioning properly. In fact, Swaney's own statements to police after the accident established that she knew her brakes were defective and that she could not stop "with force."

{¶ 13} The evidence also supported Swaney's conviction for failing to stop after an accident in violation of R.C. 4549.02. The only real issue was whether she knew she had hit Morgan. The jury reasonably could have found such knowledge. The record contains evidence that Swaney saw Morgan crossing the street before the collision and that she saw him on the ground after she passed him. She proceeded to her job site and immediately examined the area of the trailer where Morgan had been struck, including a bloody piece of plywood. When Officer Armstrong confronted Swaney and stated that he thought she was lying about her knowledge because she had examined the trailer, Swaney responded, "You're right."

{¶ 14} Based on our review of the record, we do not find that the jury clearly lost its way and created a manifest miscarriage of justice. This is not an exceptional case in

which the evidence weighs heavily against the convictions. The first assignment of error is overruled.

{¶ 15} In her second assignment of error, Swaney contends the record clearly and convincingly fails to support the trial court's consecutive-sentence findings.

{¶ 16} Under R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it finds that (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 17} "[W]here a trial court properly makes the findings mandated by R.C.

2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 38 (2d Dist.).

{¶ 18} Here the trial court made the required findings. It determined that consecutive sentences were necessary to protect the public from future crime and to punish Swaney. It found that consecutive sentences were not disproportionate to the seriousness of her conduct and to the danger she poses to the public. Finally, it found that her two offenses were committed as part of a course of conduct and that the harm caused was so great or unusual that no single prison term adequately reflects the seriousness of her conduct. Sentencing Tr. at 11-12.

{¶ 19} On appeal, Swaney cites her lack of a criminal record and the jury's failure to convict her on the greater offense of aggravated vehicular homicide to argue that consecutive sentences are disproportionate to the seriousness of her conduct and to the danger she poses to the public. We note, however, that Swaney's lack of a prior record and her acquittal on a greater charge say nothing about whether consecutive sentences are disproportionate to the seriousness of the criminal conduct for which she was convicted. The criminal conduct at issue also indicates that Swaney does pose a danger to the public notwithstanding her lack of a prior record.

{¶ 20} The State's evidence established that Swaney knowingly operated a truck and trailer with seriously defective brakes and without a driver's license. Finding herself unable to stop, she passed Smith's vehicle on the right shoulder and struck Morgan, who

she had seen walking across the street in front of Smith's car. Despite observing Morgan fall in the street, Swaney fled the scene, examined the damage to her trailer, attempted to hide the damage and disguise the truck, and lied to police about her knowledge of the accident. In light of this evidence, the record does not clearly and convincingly demonstrate that consecutive sentences are disproportionate to the seriousness of her conduct and to the danger she poses to the public.

{¶ 21} Swaney also challenges the trial court's finding that her offenses were committed as part of a course of conduct and that the harm caused by the two offenses was so great or unusual that no single prison term adequately reflects the seriousness of her conduct. She contends her failure to stop caused no independent harm. She notes the absence of evidence that her act of fleeing in any way caused physical harm to Morgan or contributed to his death. Therefore, she maintains that R.C. 2929.14(C)(4)(b) was not satisfied because it requires "the *harm caused by two or more* of the multiple offenses" to be so great or unusual that no single prison term will suffice. (Emphasis added.) Based on the premise that only one of her offenses caused any harm, Swaney asserts that the trial court's R.C. 2929.14(C)(4)(b) finding clearly and convincingly is unsupported by the record.

{¶ 22} We disagree. Nothing in R.C. 2929.14(C)(4)(b) limits the type of harm that will support consecutive sentences to physical harm. There is an inherent societal harm that occurs when an offender fails to stop after an accident, purposefully making it more difficult for justice to be served and for victims to seek redress. *State v. Mullins*, 4th Dist. Scioto No. 15CA3716, 2016-Ohio-5486, ¶ 22 (recognizing that vehicular assault and

failing to stop after an accident involve distinct harms). Therefore, we are unpersuaded by Swaney's argument that only her vehicular-homicide offense caused harm. We note too that courts have upheld similar consecutive sentences for failure to stop after an accident and aggravated vehicular homicide. *See*, *e.g.*, *State v. Tidmore*, 8th Dist. Cuyahoga No. 107369, 2019-Ohio-1529, ¶ 23; *State v. Catlett*, 3d Dist. Allen No. 1-16-10, 2016-Ohio-7260, ¶ 15. Finally, although Swaney has not raised the issue, we conclude that her offenses of vehicular homicide and failing to stop were committed as part of a "course of conduct," which merely requires a showing of "some connection" tying the offenses together. *State v. Smith*, 2d Dist. Montgomery No. 28265, 2019-Ohio-5015, ¶ 70. For the foregoing reasons, we reject Swaney's challenge to her consecutive sentences. The second assignment of error is overruled.

### III. Conclusion

**{¶ 23}** Having overruled both assignments of error, we affirm the judgment of the Clark County Common Pleas Court.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Ian A. Richardson
Michael R. Pentecost
Hon. Douglas M. Rastatter